GREGORY S. GILCHRIST (State Bar No. 111536)
RYAN BRICKER (Cal. Bar No. 269100)
SOPHY TABANDEH (Cal. Bar No. 287583)
KOURTNEY SPEER (Cal. Bar No. 348243)
VERSO LAW GROUP LLP
565 Commercial Street, 4th Fl.
San Francisco, CA 94111
Telephone: (415) 534-0495
Email: greg.gilchrist@versolaw.com
        ryan.bricker@versolaw.com
        sophy.tabandeh@versolaw.com
        kourtney.speer@versolaw.com

Attorneys for Plaintiff
LEVI STRAUSS & CO.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & CO.,<br><br>Plaintiff,<br><br>v.<br><br>RAILS INTERNATIONAL, LLC,<br><br>Defendant. | Case No. 25-cv-9175<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, DILUTION, UNFAIR COMPETITION, DECLARATORY JUDGMENT, AND DECLARATION OF NON-REGISTRABILITY**<br><br>**(INJUNCTIVE RELIEF SOUGHT)**<br><br>**JURY TRIAL DEMAND** |

This lawsuit is necessary because Defendant Rails International, LLC ("Defendant") has (1) misappropriated Plaintiff Levi Strauss & Co.'s ("LS&Co.") famous tab trademark (the "Tab trademark") as a symbol for its own apparel products, and (2) is making concrete plans to use a pocket stitching design on its products that would infringe LS&Co.'s famous Arcuate trademark (the "Arcuate trademark"). LS&Co. is the renowned apparel company whose founders invented the blue jean. LS&Co. has been manufacturing and selling apparel for over 150 years. From its gold rush beginnings, LS&Co. became one of the preeminent casual apparel companies of our time. The company's apparel production was protected as an "essential industry" during World War II, and exhibits at institutions such as the Smithsonian and Museum of Modern Art display photographs illustrating that LS&Co.'s products are a "staple of American culture, symbolizing youth, freedom,

and effortless cool." LS&Co. brands its apparel products using some of the oldest and most well-respected apparel trademarks in the world, including the Tab and Arcuate trademarks.

LS&Co. uses its Tab trademark on almost all its apparel products, including jeans, shirts, jackets, and accessories. Every year, millions of jeans, shirts, jackets, and other products are sold bearing the Tab trademark. As shown below, LS&Co. uses the Tab trademark in many colors, including red, white, blue, black, multicolor, and silver.

  

  

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





LS&Co. adopted the Tab trademark in 1936, registered the mark in 1938, and at various times, has used the mark as part of the corporate logo, in retail signage, and on the levi.com website as a sign of all the company's products and services. As shown above, the Tab trademark sometimes bears the famous LEVI'S® trademark and sometimes bears only the ® symbol. LS&Co. also owns registered and common law rights in word marks that reference the history and heritage of the Tab trademark, including LS&Co.'s BLUE TAB, RED TAB, ORANGE TAB, and SILVERTAB marks.

LS&Co. adopted the Arcuate trademark in 1873—the year Levi Strauss and Jacob Davis invented modern jeans—and registered it in 1943. The mark appears on almost every pair of LS&Co.'s jeans, as well as many jackets, shirts, and accessories. Examples of the Arcuate trademark follow:









To stop Defendant from misusing and trading on LS&Co.'s famous trademarks, reputation, and goodwill, LS&Co. seeks preliminary and permanent injunctive relief, declaratory judgment of infringement and dilution, as well as appropriate compensatory remedies and fees and costs necessitated by Defendant's conduct.  LS&Co. alleges as follows:

## JURISDICTION, VENUE, AND INTRA-DISTRICT ASSIGNMENT

1.      Plaintiff LS&Co.'s claims arise under the Trademark Act of 1946 (the Lanham Act), as amended by the Trademark Dilution Revision Act of 2006 (15 U.S.C. §§ 1051, *et seq*.).  This Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition), 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 1121 (Lanham Act).  This Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C.

§ 1367.

2.      LS&Co.'s declaratory relief claims are governed by the Declaratory Judgment Act, 28 U.S.C. § 2201 and seek a declaratory judgment that Defendant's plans and preparation to use the pocket stitching design infringes and dilutes LS&Co.'s longstanding rights in its famous Arcuate trademark.

3.      LS&Co. is informed and believes that venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant transacts affairs in this district, including operating a retail store in this district, and sells and distributes its infringing products and services.  Venue is also proper in this district because a substantial part of the events giving rise to the claims asserted arose in this district.

4.      Intra-district assignment to any division of the Northern District is proper under Local Rule 3-2(c) and the Assignment Plan of this Court as an "Intellectual Property Action."

**PARTIES**

5.      LS&Co. is a Delaware corporation with its principal place of business at Levi's Plaza, 1155 Battery Street, San Francisco, California 94111.  Operating since approximately the 1850s, LS&Co. is one of the oldest and best-known apparel companies in the world.  It manufactures, markets, and sells a variety of apparel.

6.      LS&Co. is informed and believes that Defendant Rails International LLC. is a Delaware limited liability company with its principal place of business at 2301 E. 51st Street, Vernon, CA 90058.

7.      Defendant manufactures, distributes, and/or sells apparel, including jackets, under the brand name RAILS, bearing trademarks and branding elements that infringe LS&Co.'s Tab trademark.  Defendant has applied for a trademark to use on jeans and made concrete plans to design, manufacture, distribute, and/or sell apparel bearing trademarks and branding elements that infringe LS&Co.'s Arcuate trademark.  Defendant's infringing products are offered for sale and sold throughout the United States, including in this judicial district.

**FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS**

**LS&Co.'s Tab Trademark**

8.      LS&Co. marks its products with trademarks that are famous around the world.

Among these trademarks is LS&Co.'s famous Tab trademark, which, in one configuration that is used on many products, consists of a marker sewn into pocket seams or one of the regular structural seams of the garment.

9.      LS&Co. continuously has used the Tab trademark, for nearly 90 years, to distinguish its products.  LS&Co. began to display the Tab trademark on the rear pocket of its pants in 1936 when its then National Sales Manager, Leo Christopher Lucier, proposed placing a folded cloth ribbon in the structural seams of the rear pocket.  The purpose of this "tab" was to provide "sight identification" of LS&Co.'s products.  Given the distinctiveness of the Tab trademark, Mr. Lucier asserted that "no other maker of overalls can have any other purpose in putting a colored tab on an outside patch pocket, unless for the express and sole purpose of copying our mark and confusing the customer."

10.      Since then, LS&Co. has vastly expanded its use of the Tab trademark across its product line.  LS&Co. uses the Tab trademark on jeans, pants, jackets, shirts, skirts, shorts, accessories, and a variety of other clothing products.

11.      For many years prior to the events giving rise to this Complaint and continuing to the present, LS&Co. annually has spent great amounts of time, effort, and money advertising and promoting the products on which its Tab trademark is used.  LS&Co. has sold hundreds of millions of these products bearing its Tab trademark, all over the world, accounting annually for billions of dollars in sales, including sales throughout the United States and in California.  Through these investments and large sales, LS&Co. has created considerable goodwill in its Tab trademark and a reputation for high-quality, fashionable products.

12.      The Tab trademark is famous and recognized around the world and throughout the United States by consumers as signifying authentic, high-quality LS&Co.'s garments.  LS&Co.'s Tab trademark was famous among the general consuming public long before Defendant began selling the products challenged in this Complaint.

13.      LS&Co.'s Tab trademark is registered in the United States, in the State of California, and around the world.  All registrations and common law marks for the Tab trademark are in full force and effect, valid and protectable, and exclusively owned by LS&Co.  LS&Co. continuously has

used each of its registered trademarks, from the registration date or earlier, until the present and during all times relevant to LS&Co.'s claims.

14.     In addition to its common law rights, LS&Co. owns the following United States and California trademark registrations, among others, for its Tab trademark.  The federal registrations have become incontestable under the provisions of 15 U.S.C. § 1065.

    a.     U.S. Registration No. 516,561 (first used as early as September 1, 1936; registered October 18, 1949);

    b.     U.S. Registration No. 1,157,769 (first used as early as September 1, 1936; registered June 16, 1981);

    c.     U.S. Registration No. 2,791,156 (first used as early as September 1, 1936; registered December 9, 2003);

    d.     U.S. Registration No. 356,701 (first used as early as September 1, 1936; registered May 10, 1938);

    e.     U.S. Registration No. 577,490 (first used as early as September 1, 1936; registered July 21, 1953);

    f.     U.S. Registration No. 774,625 (first used as early as May 22, 1963; registered August 4, 1964);

    g.     U.S. Registration No. 775,412 (first used as early as October 9, 1957; registered August 18, 1964);

    h.     U.S. Registration No. 2,726,253 (first used as early as March 7, 1969; registered June 17, 2003);

    i.     U.S. Registration No. 2,620,144 (first used as early as February, 1999, registered September 17, 2002); and

    j.     California Registration No. 052312 (first used as early as March 7, 1969; registered June 12, 1974).

**LS&Co.'s Arcuate Trademark**

15.     LS&Co. also owns the famous Arcuate trademark, which consists of a distinctive pocket stitching design that is the oldest known apparel trademark in the United States still in

continuous use. LS&Co. has used the Arcuate trademark continuously since 1873 in interstate commerce on clothing products. LS&Co. first used the Arcuate trademark on jeans and later used it on other products as well.

16. LS&Co. owns common law and registered rights in its Arcuate trademark including the following United States Registrations, among others. The federal registrations have become incontestable under the provisions of 15 U.S.C. § 1065.

    a. U.S. Registration No. 404,248 (first used as early as 1873; registered November 16, 1943);

    b. U.S. Registration No. 1,139,254 (first used as early as 1873; registered September 2, 1980);

    c. U.S. Registration No. 2,791,156 (first used as early as September 1, 1936; registered December 9, 2003); and

    d. U.S. Registration No. 2,794,649 (first used as early as 1873; registered December 16, 2003).

17. The Arcuate trademark is valid and protectable, and exclusively owned by LS&Co. The Arcuate trademark is famous and is recognized around the world and throughout the United States by consumers as signifying authentic, high-quality LS&Co.'s products. The Arcuate trademark became famous prior to Defendant's conduct that is the subject of this Complaint.

**Use of LS&Co.'s Trademarks Under License and in Brand Collaborations**

18. LS&Co. also uses its Tab and Arcuate trademarks in connection with many of its collaborations with other brands, including with well-respected designers and brands like Defendant. Examples of LS&Co.'s use of its Tab trademark and Arcuate trademark on garments put out under these collaborations follow:

//

//

//

//

//

LEVI'S® x OASIS




LEVI'S® x KENZO




//

//

//

//

//

1

LEVI'S® x REESE COOPER




LEVI'S® x VALENTINO



//

//

//

LEVI'S® X KIKO KOSTADINOV



LEVI'S® x SACAI

 

**Defendant's Unlawful Conduct**

19.    LS&Co. is informed and believes that Defendant is an apparel company established in 2008 that sells products in more than 50 countries through over 1,500 retailers, including Nordstrom,

Bloomingdale's, Saks Fifth Avenue, and Neiman Marcus.  Defendant offers a full collection of women's, men's, and children's apparel, including denim, shirts, jackets, pants, shorts, skirts, and accessories.

20.    In addition to third-party retailers, Defendant offers its products through its own retail stores located across the United States, including in this judicial district.  Defendant also offers and sells its products to U.S. and international consumers on its e-commerce website www.rails.com.

21.    Beginning at some point in the past and continuing until the present, Defendant has manufactured, promoted, and sold garments that infringe and dilute LS&Co.'s famous Tab trademark.  Examples of products bearing infringing tabs (the "Rails Infringing Tabs") are shown below:

 

//

//

//

//

//

//

//




22.    The Rails Infringing Tabs are substantially similar to LS&Co.'s Tab trademark.  A side-by-side comparison is provided below:

**LS&Co.'s Use of Tab Trademark**               **Defendant's Use of Rails Infringing Tab**




//

23.     Defendant uses the Rails Infringing Tabs on the same products that LS&Co. offers and which bear LS&Co.'s famous Tab trademark.  The likelihood of confusion is further exacerbated since Defendant and LS&Co. sell and advertise their products in overlapping marketing and trade channels.

24.     Based on its investigation, LS&Co. is informed and believes that Defendant has manufactured, sourced, marketed, and/or sold substantial quantities of garments bearing the Rails Infringing Tabs, and have obtained and continue to obtain substantial profits from these sales.

25.     In addition to using the Rails Infringing Tabs, LS&Co. is informed and believes that Defendant has taken concrete steps to offer for sale and sell apparel bearing trademarks and branding elements that infringe LS&Co's famous Arcuate trademark.

26.     On May 29, 2025, Defendant filed a U.S. trademark application, on an intent-to-use basis, with the United States Patent and Trademark Office ("USPTO"), Serial No. 99/207,970 for the below pocket stitching design for: "Jeans; Denim jeans; Blue jeans; Work jeans; Pants; Denims in the nature of pants; Dress pants; Corduroy pants; Denim pants; Cargo pants; Work pants; Trousers; Corduroy trousers; Golf trousers" in International Class 25 ("Rails' U.S. Trademark Application").

**"Rails Infringing Stitching Design"**



27.     When Defendant filed the Rails' U.S. Trademark Application, it submitted a sworn statement that it had a bona fide intent to use the Rails Infringing Stitching Design in U.S. commerce, as of the Application filing date on or in connection with the goods identified in the application.

28.    LS&Co. is informed and believes that Defendant has taken concrete steps to manufacture and sell products bearing the Rails Infringing Stitching Design.  Defendant already manufactures, offers, and sells the products identified in the Rails' U.S. Trademark Application, namely jeans, trousers, and pants, and accordingly is well positioned to immediately produce (if it has not started already) and sell products bearing the Rails Infringing Stitching Design.

29.    Defendant's Rails Infringing Stitching Design is confusingly similar to LS&Co.'s famous Arcuate trademark.  Both marks consist of a stitching design on the patch pocket of pants; both stitching designs feature bowed lines starting on the vertical seams of the pocket that curve down to meet in the center of the pocket.

30.    Defendant's Rails Infringing Stitching Design is for products that are identical to the products on which LS&Co. uses its Arcuate trademark.

31.    Defendant's use of the Rails Infringing Stitching Design will cause a likelihood of confusion among consumers regarding the source of Defendant's products, and whether LS&Co. has sponsored, licensed, authorized, or are somehow affiliated with Defendant's products. Consumer confusion is even more likely because both parties offer their apparel products in the same channels.

32.    To avoid the harm from Defendant's imminent plans to sell products bearing the Rails Infringing Stitching Design, LS&Co. seeks relief now.  The threat of imminent harm is real and substantial, and LS&Co. is entitled to a binding determination that Defendant's Rails Infringing Stitching Design will infringe and dilute its famous Arcuate trademark.

33.    Prior to filing this lawsuit, LS&Co. wrote to Defendant that its use of the Rails Infringing Tabs and use, or intended use, of the Rails Infringing Stitching Design violates LS&Co.'s rights in its famous Tab and Arcuate trademarks.  LS&Co. requested that Defendant abandon its U.S. trademark application, agree not to use the Rails Infringing Stitching Design, and cease all use of the Rails Infringing Tabs.  Defendant refused.

34.    Defendant continues to promote and sell garments bearing the Rails Infringing Tabs. Defendant also remains steadfast in its refusal to cease use, or preparation to use, the Rails Infringing Stitching Design and abandon the Rails' U.S. Application.

35.    In addition to causing damages, Defendant's actions have caused and will cause LS&Co. irreparable harm for which money damages and other remedies are inadequate. Unless Defendant is restrained preliminarily and permanently by this Court, it will continue and/or expand its illegal activities and otherwise continue to cause great and irreparable damage and injury to LS&Co. by, among other things:

a.    Depriving LS&Co. of its rights to use and control use of its trademarks and maintain its reputation with consumers, licensees, and collaborators, including the exclusive use of its trademarks on products and services that LS&Co. creates, produces, licenses, and sells;

b.    Creating a likelihood of confusion, mistake, and deception among consumers and the trade as to the source of the infringing products and services;

c.    Causing the public falsely to associate LS&Co. with Defendant and/or its products and services, or vice versa;

d.    Causing incalculable and irreparable damage to LS&Co.'s goodwill, reputation and standing with consumers, licensees and collaborators;

e.    Diluting the capacity of its Tab and Arcuate trademarks to differentiate LS&Co.'s products from others;

f.    Causing LS&Co. to lose sales of its genuine clothing products; and

g.    Causing others to believe the distinctive features of the Tab and Arcuate trademarks may be misappropriated for their use.

## FIRST CLAIM

## FEDERAL TRADEMARK INFRINGEMENT

### (15 U.S.C. §§ 1114-1117; Lanham Act § 32)

36.    LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 35 of this Complaint.

37.    Without LS&Co.'s consent, Defendant has used—in connection with the sale, offering for sale, distribution, or advertising of its products and services—trademarks and designs,

including tab designs (examples of which are shown in this Complaint), that infringe upon LS&Co.'s registered Tab trademark.

38.    Defendant's acts of willful trademark infringement have been committed with the intent to cause confusion, mistake, or deception, cause harm to LS&Co. and consumers, and are in violation of 15 U.S.C. § 1114.

39.    As a direct and proximate result of Defendant's infringing activities, LS&Co. is entitled to recover all of Defendant's unlawful profits and LS&Co.'s substantial damages under 15 U.S.C. 1117(a).

40.    Defendant's infringement of LS&Co.'s Tab trademark is an exceptional case and was intentional, entitling LS&Co. to treble the amount of its damages and Defendant's profits, and to an award of attorneys' fees under 15 U.S.C. §§ 1117(a).

41.    LS&Co. is entitled to injunctive relief pursuant to 15 U.S.C. 1116(a).

## SECOND CLAIM

## FEDERAL UNFAIR COMPETITION

### (False Designation of Origin and False Description)

### (15 U.S.C. § 1125(a); Lanham Act § 43(a))

42.    LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 35 of this Complaint.

43.    Defendant's use of the Rails Infringing Tabs and—including the tab designs shown by example in this Complaint—tends falsely to describe its products and services within the meaning of 15 U.S.C. § 1125(a)(1).  Defendant's conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant and Defendant's products and services, to the detriment of LS&Co. and consumers in violation of 15 U.S.C. § 1125(a)(1).

44.    As a direct and proximate result of Defendant's willful infringing activities, LS&Co. is entitled to recover all of Defendant's unlawful profits and LS&Co.'s substantial damages under 15 U.S.C. § 1117(a).

45.    Defendant's infringement of LS&Co.'s Tab trademark represents an exceptional case

and was intentional, entitling LS&Co. to treble the amount of its damages and Defendant's profits, and to an award of attorneys' fees under 15 U.S.C. § 1117(a).

46.    LS&Co. is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

### THIRD CLAIM

### FEDERAL DILUTION OF FAMOUS MARKS

**(Trademark Dilution Revision Act of 2006)**

**(15 U.S.C. § 1125(c); Lanham Act § 43(c))**

47.    LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 35 of this Complaint.

48.    LS&Co.'s Tab trademark is distinctive and famous within the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c), and was distinctive and famous prior to Defendant's conduct as alleged in this Complaint.

49.    Defendant's conduct is likely to cause dilution of LS&Co.'s Tab trademark by diminishing its distinctiveness in violation of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).

50.    Defendant diluted LS&Co.'s Tab trademark willfully, entitling LS&Co. to an award of damages and disgorgement of Defendant's profits.

51.    LS&Co. is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c).

### FOURTH CLAIM

### CALIFORNIA TRADEMARK INFRINGEMENT AND DILUTION UNDER

### CALIFORNIA AND COMMON LAW

**(Cal. Bus. & Prof. Code §§ 14200 *et seq*.; Cal. Bus. & Prof. Code § 14247)**

52.    LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 35 of this Complaint.

53.    LS&Co. owns registered and common law rights in its Tab trademark.

54.    Defendant's use of the Rails Infringing Tabs—that are substantially similar to the Tab trademark—occurred without LS&Co.'s consent.

55.    LS&Co.'s Tab trademark became famous in California long before Defendant began

using its infringing trademarks and designs.

56.    Defendant's use of the Rails Infringing Tabs is likely to cause consumer confusion about the source of Defendant's goods and services or about a relationship between LS&Co., and Defendant and is likely to dilute LS&Co.'s Tab trademark , in violation of California Business & Professions Code §§ 14200 et seq., California Business & Professions Code § 14247, and California common law.

57.    Defendant infringed and diluted LS&Co.'s Tab trademark with knowledge and intent to cause confusion, mistake, or deception.

58.    Defendant's conduct is aggravated by that kind of willfulness, wantonness, malice, and conscious indifference to the rights and welfare of LS&Co. for which California law allows the imposition of exemplary damages.

59.    Pursuant to California Business & Professions Code §§ 14247 and 14250, LS&Co. is entitled to injunctive relief and damages in the amount of three times Defendant's profits and three times all damages suffered by LS&Co. by reason of Defendant's manufacture, use, display, and sale of infringing goods and services.

**FIFTH CLAIM**

**CALIFORNIA UNFAIR COMPETITION**

**(Cal. Bus. & Prof. Code § 17200)**

60.    LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 35 of this Complaint.

61.    Defendant's conduct constitutes "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising" within the meaning of California Business & Professions Code section § 17200.

62.    LS&Co. is entitled to injunctive relief preventing the conduct alleged in this Complaint.

//

//

//

# SIXTH CLAIM

## DECLARATORY JUDGMENT OF FEDERAL TRADEMARK INFRINGEMENT

### (15 U.S.C. §§ 1114-1117; Lanham Act § 32)

63.     LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 35 of this Complaint.

64.     LS&Co.'s federally registered Arcuate trademarks are valid and enforceable and were so long before Defendant filed the Rails' U.S. Application or began taking meaningful steps to use the Rails Infringing Stitching Design.

65.     LS&Co. seeks a judicial declaration that Defendant's Rail Infringing Stitching Design does or will infringe LS&Co.'s famous Arcuate trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

66.     Defendant has used, or at least has concrete plans to use, the Rails Infringing Stitching Design in connection with the sale, offering of sale, distribution, or advertising of products that are identical to and overlap with products sold by LS&Co.

67.     Defendant's use of the Rails Infringing Stitching Design is likely to cause consumer confusion and therefore infringes LS&Co.'s federal registered Arcuate trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

68.     These acts of trademark infringement have been committed with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114.

69.     LS&Co. requests that the Court declare that Defendant's use or intended use of the Rails Infringing Stitching Desing infringes LS&Co.'s registered Arcuate trademark.

70.     LS&Co. is entitled to injunctive relief pursuant to §§ 1116(a) and 1125(c) that requires Defendant to stop all use and preparation to use the Rails Infringing Stitching Design and any other mark or design similar to the famous Arcuate trademark.

71.     In addition, LS&Co. is entitled to a directive to the USPTO that the Rails' U.S. Application be refused and that the mark shall not be registered.

//

//

## SEVENTH CLAIM

## DECLARATORY JUDGMENT OF DILUTION

## (15 U.S.C. § 1125(c) ; Lanham Act § 43(c))

72.    LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 35 of this Complaint.

73.    LS&Co.'s Arcuate trademark is famous within the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c), and was famous prior to Defendant's adoption of the confusingly similar Rails Infringing Stitching Design.

74.    Defendant's use, or planned use of the mark in the United States, is likely to blur and erode the distinctiveness of LS&Co.'s famous Arcuate trademark among consumers in the United States and therefore dilutes LS&Co.'s famous federally registered Arcuate trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1125(c)(2)(B).

75.    LS&Co. seeks a judicial declaration that Defendant's Rails Infringing Stitching Design does or will dilute LS&Co.'s famous Arcuate trademark in violation of 15 U.S.C. § 1125(c).

76.    LS&Co. is entitled to injunctive relief pursuant to §§ 1116(a) and 1125(c) that requires Defendant to stop all use and preparation to use the Rails Infringing Stitching Design and any other mark or design similar to the famous Arcuate trademark.

77.    LS&Co. is also entitled to a directive to the USPTO that the Rails' U.S. Application be refused and that the mark shall not be registered.

## EIGHTH CLAIM

## DECLARATION OF NON-REGISTRABILITY OF APPLICATION SER. NO. 97/207,970

78.    LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 35 of this Complaint.

79.    Defendant's plans to use the Rails Infringing Stitching Design to advertise, offer, and sell goods that directly compete with LS&Co.'s goods is likely to result in confusion, mistake, or deception as to the source of the goods, or the false impression that LS&Co. has sponsored, licensed, or approved Defendant or its products.

80.    Defendant's intended use of the Rails Infringing Stitching Design to advertise, offer,

and sell goods that are identical to and overlap with LS&Co.'s goods is likely to dilute LS&Co.'s famous Arcuate trademark.

81.    Defendant's U.S. trademark application for the Rails Infringing Stitching Design (App. Ser. No. 97/207,970) should be refused pursuant to 15 U.S.C. § 1052(d) and § 1125(c).

82.    LS&Co. also is entitled to have the Court direct the USPTO that Defendant's U.S. trademark application be refused and that the mark shall not be registered.

<u>**PRAYER FOR JUDGMENT**</u>

Based on these allegations, all of which will be proven in due course, LS&Co. prays that this Court grant it the following relief:

1.    Adjudge that Defendant infringed LS&Co.'s Tab trademark in violation of LS&Co.'s rights under common law, 15 U.S.C. § 1114, and/or California law;

2.    Declare and adjudge that Defendant's use of, or plans to use, the Rails Infringing Stitching Design infringes or are likely to infringe LS&Co.'s Arcuate Trademark in violation of LS&Co.'s rights under 15 U.S.C. § 1114.

3.    Adjudge that Defendant has competed unfairly with LS&Co. in violation of LS&Co.'s rights under common law, 15 U.S.C. § 1125(a), and/or California law;

4.    Adjudge that Defendant's activities are likely to dilute LS&Co.'s famous Tab trademark in violation of LS&Co.'s rights under common law, 15 U.S.C. § 1125(c), and/or California law;

5.    Declare and adjudge that Defendant's use of, or plans to use, the Rails Infringing Stitching Design dilute or are likely to dilute LS&Co.'s famous Arcuate trademark in violation of LS&Co.'s rights under 15 U.S.C. § 1125(c).

6.    Adjudge that Defendant and its agents, employees, attorneys, successors, assigns, affiliates, and joint venturers and any person(s) in active concert or participation with it, and/or any person(s) acting for, with, by, through or under it, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

a.    Manufacturing, producing, sourcing, importing, exporting, selling, buying, offering for sale, distributing, licensing, advertising, or

promoting any goods or services, using any words, symbols or designs
that so resemble LS&Co.'s Tab or Arcuate trademarks as to be likely to
cause confusion, mistake or deception, on or in connection with any
product or service that is not authorized by or for LS&Co., including
without limitation, the infringing trademarks and designs that are the
subject of this Complaint and for which Defendant is responsible, or any
other approximation of LS&Co.'s trademarks;

b.    Using any word, term, name, symbol, device, design, or combination
thereof that causes or is likely to cause confusion, mistake, or deception
as to the affiliation or association of Defendant's products and services
with LS&Co. or as to the origin of Defendant's goods and services, or
any false designation of origin, false or misleading description or
representation of fact, or any false or misleading advertising;

c.    Claiming trademark rights in the Rails Infringing Tabs, Rails Infringing
Stitching Design, or any other word, symbol, or design that is
confusingly similar to the Tab trademark or Arcuate trademark,
including by applying now or in the future for federal registration of
trademarks comprising the Rails Infringing Tabs, Rails Infringing
Stitching Design, or any other word, symbol, or design that is similar to
the Tab trademark or Arcuate trademark;

d.    Infringing LS&Co.'s rights in and to any of its trademarks or otherwise
damaging LS&Co.'s goodwill or business reputation;

e.    Diluting or further diluting the Tab or Arcuate trademarks;

f.    Otherwise competing unfairly with LS&Co. in any manner; and

g.    Continuing to perform in any manner whatsoever any of the unlawful
acts described in this Complaint;

7.    Order that registration of U.S. Trademark Application Ser. No. 97/207,970 must be
refused, and/or that any registration resulting from the application must be cancelled, and address its

certified order to the USPTO, Office of the Solicitor, Mail Stop 8, Director of the USPTO, P.O. Box 1450, Alexandria, Virginia 22313;

8.      Declare that Defendant is prohibited from applying to register any trademark or service mark which is likely to be confused with, or that dilutes the distinctive quality of LS&Co.'s famous Tab and Arcuate trademarks;

9.      Adjudge that Defendant is required immediately to supply LS&Co.'s counsel with a complete list of individuals and entities from whom or which they purchased, and to whom or which they sold, offered for sale, distributed, advertised or promoted, infringing products and services as alleged in this Complaint;

10.     Adjudge that Defendant is required immediately to deliver to LS&Co.'s counsel, its entire inventory of infringing products and services, including without limitation shirts, shorts, rompers, pants, dresses, and any other clothing, packaging, labeling, photographs, advertising and promotional material, and all plates, patterns, molds, matrices and other material for producing or printing such items, domain names, or social media handles that are in their possession or subject to their control and that infringe or facilitate infringement of LS&Co.'s trademarks as alleged in this Complaint;

11.     Adjudge that Defendant, within thirty (30) days after service of the judgment demanded herein, be required to file with this Court and serve upon LS&Co.'s counsel a written report under oath setting forth in detail the manner in which it has complied with the judgment;

12.     Adjudge that LS&Co. recover from Defendant its damages and lost profits, and Defendant's profits, in an amount to be proven at trial, as well as punitive damages under California law;

13.     Adjudge that Defendant be required to account for any profits that are attributable to their illegal acts, and that LS&Co. be awarded (a) Defendant's profits and (b) all damages sustained by LS&Co., under 15 U.S.C. § 1117, plus prejudgment interest;

14.     Adjudge that the amounts awarded to LS&Co. pursuant to 15 U.S.C. § 1117 shall be trebled;

15.     Order an accounting of and impose a constructive trust on all of Defendant's funds

and assets that arise out of their infringing and dilutive activities;

16.     Adjudge that LS&Co. be awarded its costs and disbursements incurred in connection with this action, including LS&Co.'s reasonable attorneys' fees and investigative expenses; and

17.     Adjudge that all such other relief be awarded to LS&Co. as this Court deems just and proper.

Dated:  October 24, 2025                    Respectfully submitted,

                                            VERSO LAW GROUP LLP


                                            By: */s/ Sophy Tabandeh*_____
                                            Gregory S. Gilchrist
                                            Ryan Bricker
                                            Sophy Tabandeh
                                            Kourtney Speer

                                            Attorneys for Plaintiff
                                            LEVI STRAUSS & CO.

1

## **DEMAND FOR JURY TRIAL**

2

Levi Strauss & Co. demands that this action be tried to a jury.

3

Dated: October 24, 2025

4

Respectfully submitted,

VERSO LAW GROUP LLP

5

6

By: */s/ Sophy Tabandeh*

7

Gregory S. Gilchrist
Ryan Bricker
Sophy Tabandeh
Kourtney Speer

8

9

Attorneys for Plaintiff
LEVI STRAUSS & CO.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28